## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNIQUE PRODUCT | ) | |
| SOLUTIONS, LIMITED | ) | **CASE NO.: 5:10 CV 01471** |
| | ) | |
| Relator, | ) | **JUDGE JOHN R. ADAMS** |
| | ) | |
| vs. | ) | |
| | ) | |
| OTIS PRODUCTS, INC. d/b/a | ) | |
| OTIS TECHNOLOGY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

### RELATOR, UNIQUE PRODUCT SOLUTIONS, LIMITED'S
### MEMORANDUM IN OPPOSITION TO DEFENDANT'S
### MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

## I.  INTRODUCTION

Unique Product Solutions, Limited ("Unique") filed this lawsuit as a *qui tam* relator on

behalf of the United States against Defendant Otis Products, Inc. d/b/a Otis Technology, Inc.

("Defendant") and has alleged violations of the federal false patent marking statute, 35 U.S.C. §

292 ("Section 292"). Defendant, a self-proclaimed "high volume manufacturer of consumer

products" which are sold at retail stores throughout the United States, including in this District,

has requested that this Court transfer this case to its home district, the Northern District of New

York ("N.D.N.Y"), pursuant to 28 U.S.C. § 1404(a).

Importantly, several Districts Courts have recently denied similar requests to transfer

venue by defendants in actions brought under Section 292.[1] Further, even in a *qui tam* action, "a

---

[1] *See e.g.*, *Hollander v. Etymotic Research, Inc.*, 2010 U.S. Dist. LEXIS 71071 (E.D. Pa., July 14, 2010); *U.S. ex rel. FLFMC, LLC v. Ace Hardware Corp.*, 2010 U.S. Dist. LEXIS 45453 (W.D. Pa., May 7, 2010); and *Harrington v. CIBA Vision Corp.*, 2008 U.S. Dist. LEXIS 64199 (W.D. N.C., July 23, 2008).
Copies of the unofficially reported cases cited in this Memorandum, which are not attached to the Memorandum in Support of Defendant's Motion, are attached hereto as Exhibit C.

plaintiff's choice of a proper forum is a paramount consideration …, and that choice 'should not be lightly disturbed.'"[2] Unique chose to bring this action in the Northern District of Ohio (the "District") to protect consumers and competitors, both actual and potential, located in the District as the products upon which this lawsuit is based are offered for sale and were, in fact, purchased by Unique in this District. Further, Defendant does not assert that this District is an improper venue, but rather that the N.D.N.Y. is simply a more convenient venue for Defendant, ignoring the additional burdens and inconveniences imposed upon Unique if this case is transferred.

A defendant requesting a transfer of venue must show more than a shift in the inconveniences between parties, but rather must establish that the convenience of the parties or the interests of justice weigh <u>strongly</u> in favor of a transfer of venue.[3] If this case is transferred, the inconveniences would be shifted from Defendant, a large corporation that has violated a federal statute for at least the last four years, to Unique, a relatively new company with limited resources that is performing a public service by enforcing Section 292 as specifically authorized by Congress and acknowledged by the Court of Appeals for the Federal Circuit.[4]  Moreover, this District certainly has a valid interest in ensuring that consumers and competitors located within the District are protected from Defendant's deceptive trade practices.

## II.  STATEMENT OF THE CASE

Unique filed its Complaint with Jury Demand ("Complaint") on behalf of the United States against Defendant on July 1, 2010. The Complaint alleges that Defendant violated Section 292 for more than four years by marking a certain product, The Tactical Cleaning System, with an expired and unenforceable United States patent number. After further investigation, Unique

---

[2] *Hollander*, at *20-*21 *citing Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3rd Cir., 1970) (underline added).

[3] *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir., 1951)(emphasis added); and *Bacik v. Peek*, 888 F. Supp. 1405 (N.D. Ohio, 1993).

[4] *See The Forest Group, Inc. v. Bon Tool Co.*,  590 F.3d 1295, 1303-04 (Fed. Cir., 2009) ("By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.").

discovered that Defendant manufactured and marked an additional product, Otis 085 UltraBore Premium Gun Cleaning Solvent, with this same expired and unenforceable patent. Unique also discovered that The Tactical Cleaning System was marked with another expired patent number, which Defendant admits has no relation to any of its products. Accordingly, Unique moved for and was granted leave to file its First Amended Complaint and Jury Demand ("Amended Complaint"), which is being filed simultaneously with this Memorandum in Opposition.

On September 7, 2010, Defendant filed its Motion to Transfer Venue under 28 U.S.C. §1404, Memorandum in Support of same and exhibits thereto (collectively, "Defendant's Motion"), which Unique hereby opposes. Essentially, Defendant attempts to justify its request to transfer venue based upon its aversion to Section 292, disgust with Unique's attempt to enforce the same, and the inconvenience of two employees which Defendant expects will be called as witnesses in this matter. However, Defendant fails to recognize that Congress has expressly authorized *qui tam* relators, like Unique, to bring false marking actions in any district where the defendant may be found, including, in this case, this District.

In both the Complaint and Amended Complaint, Unique alleges that venue is proper in this District based upon the following: (1) Defendant, either itself or through agents/representatives, regularly conducts and transacts business in the District;[5] (2) Defendant, either itself or through third-party intermediaries, offers for sale, sells, marks and/or advertises products in this District;[6] (3) Defendant has voluntarily sold the products which are the subject of the Complaint and Amended Complaint in this District;[7] (4) Defendant is subject to personal

---

[5] *See* Amended Complaint, at ¶14.

[6] *See* Amended Complaint, at ¶ 16.

[7] *See* Amended Complaint, at ¶ 17.

jurisdiction in this District;[8] and (5) Defendant is a relatively large, sophisticated company who committed acts of false marking within this District.[9]  Further, Unique has not had the opportunity through discovery to explore any additional connections Defendant may have to the District. Also, Defendant has not disputed or denied any of the foregoing allegations, even though it responded to the Complaint by filing its Motion to Dismiss Under Rule 12(b)(1) and/or 12(b)(6), or in the Alternative to Stay Proceeding Pending *Stauffer v. Brooks Brothers* on August 31, 2010.

As set forth more fully below, Defendant fails to meet its burden to show that the convenience of the parties and non-party witnesses, and the interests of justice weigh strongly in favor of transferring this lawsuit to the N.D.N.Y. Therefore, in light of the currently undisputed allegations contained in the Complaint and Amended Complaint, and deference given to Unique's choice of venue, Unique respectfully requests that this Court deny Defendant's Motion.

## III. LAW AND DISCUSSION

### A. Several Districts have Recently Denied a Defendant's Request to Transfer Venues in *Qui Tam* False Marking Actions Brought Pursuant to Section 292.

United States District Courts have respected the choice of relators bringing *qui tam* actions under Section 292 forcing large companies distributing their products nationwide, like Defendant, to defend such actions in a district other than where the defendant's headquarters are located.[10] 35 U.S.C. § 50, the predecessor to Section 292, expressly provided that venue was only proper where the offense was committed, i.e. where the actual stamping or affixing of the false markings occurred.[11]  Notably, Congress did not include any such language in Section 292,

---

[8] *See* Amended Complaint, at ¶ 18.

[9] *See* Amended Complaint, at ¶ 17 & 21.

[10] *See e.g.*, *Hollander*; *U.S. ex rel. FLFMC, LLC*; and *Harrington*.

[11] *Harrington*, at *3-*4.

4

meaning that venue is proper in any district where the defendant is found.[12] Thus, Congress intended false marking actions to be brought in districts other than the defendant's home district.

Defendant does not assert that: (i) venue is improper in this District; (ii) this Court lacks personal jurisdiction over Defendant; (iii) Defendant is not subject to service of process in this District; or (iv) that Defendant does not sell products (either through third-party distributors or through its website) to consumers in this District. Moreover, of the few cases cited by Defendant that did transfer venue in an action brought under Section 292, one was transferred pursuant to the consent of both parties[13] and two were from the same district – the Northern District of California.[14]

This District is one of many proper venues in which Unique could have brought this action. Further, Defendant's obvious distaste for Unique's efforts to enforce Section 292, as expressly authorized by Congress, does not justify a transfer of venue to Defendant's home district in this case.

## B. Defendant Failed to Show that the Relevant Conveniences <u>Weigh Strongly in Favor of Transferring this Case to the Northern District of New York</u>

In the Sixth Circuit, the party requesting a transfer of venue pursuant to 28 U.S.C. § 1404(a) bears the heavy burden of showing that the relevant private and public interest factors, discussed below, "weigh <u>strongly</u> in favor of transfer."[15]  Further, when a transfer of venue

---

[12] *Id.* 28 U.S.C. § 1395(a).

[13] *See e.g.*, *Josephs v. Sigma-Aldrich Corp.*, Stipulated Order Transferring Venue, Pursuant to 28 U.S.C. § 1404 (filed June 7, 2010), Case No. 10-10660 (E.D. Mich.., 2010). A copy of this Stipulated Order is attached hereto as <u>Exhibit A</u>.

[14] *See San Francisco Tech, Inc. v. The Glad Products Co.*, 2010 U.S. Dist. LEXIS 83681 (N.D. Cali., 2010) (This opinion is attached to Defendant's Motion to Transfer in Appendix of Unofficially Reported Cases, <u>Exhibit 8</u>); and *San Francisco Tech., Inc. v. Adobe Systems Inc.*, 2010 U.S. Dist. LEXIS 40216 (N.D. Cali., 2010) (This opinion is attached to Defendant's Motion to Transfer in Appendix of Unofficially Reported Cases, <u>Exhibit 7</u>).

[15] *Nicol* (emphasis added); and *Bacik*, at 1415.

merely shifts the inconvenience from the defendant to the plaintiff, the plaintiff's choice of venue must prevail.[16]

    1.  <u>Private Interest Factors</u>

The private interest factors to be considered include: (1) <u>plaintiff's choice of forum</u>; (2) convenience of the parties; (3) convenience of non-party witnesses, including the availability of compulsory process to secure the attendance of such witnesses; (4) the ease of access of sources of proof; (5) the need to inspect the premises (inapplicable in this instance); and (6) differences in the cost of litigation in the two forums.

    a.  *Unique Chose the Northern District of Ohio.*

Unique chose the Northern District of Ohio because it purchased the allegedly falsely marked products and observed Defendant's products being offered for sale within this District on several occasions.  Even in a *qui tam* action brought under Section 292, "<u>weight must still be given to [the relator]'s choice</u>," as the relator, like any other plaintiff, is responsible for litigating the cause of action.[17]  Accordingly, this factor weighs heavily in favor of denying Defendant's request to transfer this matter to the district in which its headquarters are located.

    b.  *Defendant will not be Significantly Inconvenienced if This Lawsuit is not Transferred; Whereas Unique will be Significantly Inconvenienced if This Lawsuit is Transferred.*

This District requires more than a mere shifting of inconveniences to the plaintiff to justify a transfer of venues under 28 U.S.C. § 1404(a).[18]  The Defendant's Motion specifically identifies only two likely witnesses, both of which are Defendant's employees: (i) Doreen

---

[16] *Bacik*, at 1415 *citing Van Dusen v. Barrack*, 376 U.S. 612, 645-46); and *Raymond E. Danto, Assocs., Inc. v. Arthur D. Little, Inc.*, 316 F. Supp. 1350, 1358 (E.D. Mich., 1970).

[17] *Harrington*, at *3  (Emphasis added).

[18] *Bacik*, at 1415 *citing Van Dusen v. Barrack*, 376 U.S. 612, 645-46 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."); and *Raymond E. Danto, Assocs., Inc*, at 1358.

Garrett, Defendant's President; and (ii) Tom Scott, Defendant's Marketing Director. In weighing the convenience of the parties, the weight given to the location of witnesses which are employees of a party to the lawsuit is discounted.[19]  Further discounted is the cost for large corporations with considerable resources to call its own employees as witnesses.[20]

Defendant has described itself as both a "high volume manufacturer of consumer products" with a nationwide distribution chain, and a business with limited resources whose operations and "ability to conduct business" would be "greatly" and "significantly" disrupted by the temporary absence of two employees.[21]  Surely, Ms. Garrett and Mr. Scott travel out of New York for business from time to time, or have taken a vacation, missed time due to an illness or otherwise have been absent from Defendant's headquarters in New York during the course of their employment. However, during these absences, Defendant's operations have presumably continued, uninterrupted.  Moreover, Defendant regularly sends employees all over the United States to attend gun shows to display and market its products without significant interruption to its operations.[22]

As a large, nationwide retailers of consumer products, Defendant should be required and prepared to defend an action based upon a violation of federal law in any district in which its products are sold. To this end, Defendant quickly obtained local counsel in the District to defend this lawsuit. Conversely, Unique operates in one judicial district, this District, and has no

---

[19] *See Bacik*, at 1415; *U.S. ex rel. Roop v. Arkray USA, Inc.*, 2007 U.S. Dist. LEXIS 19325 (N.D. Miss., 2007) (This opinion is attached to Defendant's Motion to Transfer in Appendix of Unofficially Reported Cases, Exhibit 15); and *Schindewolf v. Seymour Constr., Inc.*, 2010 U.S. Dist. LEXIS 56694 (N.D. Ohio, 2010) (This opinion is attached to Defendant's Motion to Transfer in Appendix of Unofficially Reported Cases, Exhibit 9).

[20] *Roop*, at *10.

[21] *See* Defendant's Memorandum of Law in Support of Otis Technology's Motion to Dismiss Under Rule (B)(1) and/or 12(B)(6), or in the Alternative to Stay Pending a Decision in *Stauffer v. Brooks Brothers*, at p. 2; *compare with* Declaration of Doreen Garrett attached to Defendant's Motion to Transfer, at ¶¶ 18-19.

[22] For example, Unique has learned that Defendant is planning to attend and host a booth at a gun show in Pittsburgh, Pennsylvania in April, 2010.

expectation or presence anywhere else in the country.[23]  If this matter were transferred to the N.D.N.Y., Unique would likely need to obtain local counsel in New York causing it to incur additional legal costs and greatly impeding its ability to prosecute this false marking action, as expressly authorized by Congress under Section 292 and specifically acknowledged by the Court of Appeals for the Federal Circuit.[24]  If transferred, Unique will face the same inconvenience and expense Defendant recites as justifying a transfer to its home district, including the attendance and cost of travel for witnesses, including its President, James Conrad.[25]  Further, Mr. Conrad has a full-time job unrelated to Unique that will also be impacted if required to travel to New York on several occasions to present the United States government's claim in this matter.

Moreover, Unique is a newly organized, small company with limited resources created to, among other things, enforce Section 292 on behalf of the United States government as expressly authorized by Congress.[26]  Conversely, Defendant is a large manufacturer of consumer products distributed throughout the country which is asking this Court to give significant weight to its own conveniences at Unique's expense, after allegedly violating a federal statute for at least the last four years. Therefore, due to the unproportionate burden to be placed upon Unique if this lawsuit is transferred to the N.D.N.Y., this factor also weighs heavily in favor of denying Defendant's Motion.[27]

> c.   *Location and Cost of Non-Party Witnesses Weighs Strongly in Favor of Unique.*

---

[23] Declaration of James J. Conrad ("Conrad Declaration"), at ¶¶ 2-3. The Conrad Declaration is attached hereto as Exhibit B.

[24] *See Pequignot v. Solo Cup Co.*, 608 F.3d 1356 (Fed. Cir., 2010); and *Stauffer v. Brooks Bros.*, 2010 U.S. App. LEXIS 18144 (Fed. Cir., Aug. 31, 2010) ("In passing the statute prohibiting deceptive patent mismarking, Congress determined that such conduct is harmful and should be prohibited.").

[25] Conrad Declaration, at ¶ 4.

[26] *Forest Group,* at 1303-04; and *Brooks Bros.*, at *13 - *19.

[27] *Medi, USA v. Jobst. Institute, Inc.*, 791 F.Supp. 208 (N.D. Ill., 1992) (ability of parties to bear the expense of trial in a particular forum is a relevant factor).

8

"The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover… If a party merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied."[28]

As a preliminary matter, Unique contends that any assertion of potential or likely witnesses at this juncture is premature as the parties have not yet made initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure. Further, Defendant has not yet answered Unique's Complaint or its Amended Complaint and, thus, Unique is unable to ascertain which of its allegations will be disputed and which defenses Defendant will assert.

Nonetheless, Defendant has not specifically identified any potential non-party witnesses located outside of this District.  Rather, Defendant loosely states that to the extent there are non-party witnesses, these witnesses <u>likely</u> reside in the jurisdiction of the N.D.N.Y.[29] These general and imprecise assertions are insufficient for any weight to be given to the inconvenience of unidentified non-party witnesses who may or may not reside in the N.D.N.Y.[30]

Defendant does identify Pyramont North America as the designer of its product packaging, but notably does not state that any employees or representatives of Pyramont North America are likely to testify in this matter.  Accordingly, Pyramont North America must only possesses documents which are relevant to this matter.[31]

By comparison, and although premature, Unique anticipates calling at least one non-party witness from this District to testify, namely an employee of Dick's Sporting Goods to testify

---

[28] *Bacik*, at 1415.

[29] "<u>To the extent there are nonparty witnesses</u> with relevant information, such as former Otis employees, those employees and witnesses <u>likely</u> reside in the jurisdiction of the Northern District of New York…" *See* Memorandum in Support of Defendant's Motion, at p. 7 (underline added).

[30] *Bacik*, at 1415.

[31] *See* Declaration of Doreen Garrett attached to Defendant's Motion to Transfer, at ¶ 14.

regarding the sale of Defendant's products <u>in this District</u> and how long after being purchased are Defendant's products displayed for sale <u>in this District</u>.  If Defendant's Motion is granted, the N.D.N.Y. could not compel the attendance of such a non-party witness located in this District.

Further, Unique anticipates retaining at least three experts <u>located in this District</u> to testify as to the following matters:

- <u>Marketing/Advertising Expert</u> – The reasonable and normal procedures undertaken when reviewing and/or updating product packaging, including the costs and expense of changing, removing or updating intellectual property markings thereon.
- <u>Intellectual Property Law Expert</u> –United States' intellectual property laws and false marking violations.
- <u>Economist</u> – The effects of false marking violations, including those alleged against the Defendant, on the economy, including the effect of such violations in this District.[32]

The latter two experts are also anticipated to testify regarding damages in this case   Inasmuch as the parties have not yet made their initial disclosures and Defendant has not filed its Answer, Unique is not required to disclose the identity of the experts it intends to call, but will state that such experts are residents of this District.  Unique will undeniably incur significant additional expenses, in both retaining its experts and providing for their travel, if this matter is transferred.

In summary, while Defendant does not identify any non-party witnesses located outside this District, Unique has identified one non-party lay witness, one representative of Unique and at least three expert witnesses it expects to call to testify in this lawsuit which reside or are located in this District. Unique, a company with limited resources, will certainly incur significant additional inconvenience and expense if its lay and expert witnesses are required to travel to New York to testify in this matter, thereby significantly impede its ability to pursue this lawsuit, which Congress has specifically authorized it to bring.  Therefore, the convenience of witnesses, and Unique's cost to retain same, weighs strongly in favor of denying Defendant's Motion.

---

[32] Conrad Declaration, at ¶ 5.

   d.  *The Evidence to be Presented in This Case Primarily Consists of Documents which can be Easily and Inexpensively Sent from New York to Ohio.*

This District is not alone in recognizing that documentary evidence is easily and inexpensively exchanged and reproduced between parties throughout the country, regardless of where the original documents are located.[33] "[T]he associated cost of production has, at best, become somewhat neutral in light of the availability and relative ease of the electronic transfer of documents from one locale to another."[34]

Defendant's Motion specifically references only documents which are likely to be produced during discovery or at a trial in this matter, which can be easily exchanged between the parties electronically, and at minimal expense.[35]  Again, although premature, Unique anticipates that an agreement can be reached in this case providing for e-discovery.

Furthermore, despite mentioning "other evidence" numerous times, Defendant's Motion does not specifically identify one item of non-documentary evidence expected to be produced in this case. Likewise, Unique does not anticipate any such non-documentary evidence being produced in this case, except for Defendant's falsely marked products purchased by Unique in this District, which are currently in Unique's possession and being stored in this District.[36]

Therefore, Defendant will incur minimal, if any, additional expense in producing documents during discovery or at a trial, whether these documents are located within this

---

[33] *Mail Boxes Etc., Inc. v. T.C. May, Inc.*, 2006 U.S.Dist. LEXIS 65588, at *7 (N.D. Ohio, 2009); *I.E. Liquidation, Inc. v. Litostroj Hydro, Inc. (In re I.E. Liquidation, Inc.)*, 2009 Bankr. LEXIS 1448, at *36  (N.D. Ohio, 2009); *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir., 1992) ("Defendant's conclusory averment regarding the boxes of (unidentified, undescribed) 'documents existing relating to the instant cause of action…' is clearly deficient. Defendant never attempted to explain, let alone substantiate, why these documents could not be sifted through (at his Florida offices) and the probative ones shipped at relatively minor cost to Oklahoma for trial."); *Audi AG and Volkswagon of Amer., Inc. v. D'Amato*, 341 F.Supp.2d 734, 751 (E.D. Mich., 2004); and *CompSource Okla. v. BNY Mellon, N.A.*, 2009 U.S. Dist. LEXIS 36441 at *9-*10 (E.D. Okla., 2009).

[34] *CompSource*, at *9-*10.

[35] *See* Declaration of Doreen Garrett attached to Defendant's Motion to Transfer, at ¶ 11.

[36] Conrad Declaration, at ¶¶ 6-7.

11

District, in the N.D.N.Y. or halfway around the world.[37] Accordingly, this factor weighs heavily in favor of Unique since the only physical evidence likely to be produced – the actual products purchased by Unique – is already located in this District.

  e.  *This Case is Distinguishable from Other Cases Transferred by this Court Involving Real Property or the Inspection of an Accident Scene Located Outside the District.*

The authority from this District cited in Defendant's Motion is support of transferring this case to N.D.N.Y. is completely distinguishable from the current case, as explained below:

- *Schindewolf v. Seymour Const. Inc.*[38] involved the development of the plaintiff's real estate located in Florida. Since the <u>real property likely to be inspected was located in Florida</u>, and all but one non-party witness was located in Florida, the conveniences realized from transferring the case to Florida were overwhelming.
- *Phelps v. U.S.* required an <u>on-site view of an accident scene located in Michigan</u>.[39] Further, it should be noted that the parties had made their initial disclosures, thereby indentifying potential witnesses, before the case was transferred.
- In *Krawec v. Alleghany Co-Op Ins.*, the lawsuit was transferred to the Western District of New York under 28 U.S.C. § 1406(a), not the statute under which Defendant's Motion is based, because <u>this District did not have personal jurisdiction over the defendant</u>, which is not the case in this matter.[40]
- *Soprema, Inc. v. Beachside Roofing LLC* involved alleged defective workmanship with respect to a roofing contract performed in Hawaii. In describing the evidence at issue, the court explained "it will <u>be essential to the case to view the construction [s]ite</u>. Experts must have access to view the roof and, in addition to the experts, the witnesses to the work performed, the supervisors who supervised the installation and the contractors and subcontractors who worked on the project, will all be disposed…. Nearly all of [the evidence is] located in Hawaii."[41] Further, "[n]ot only has Plaintiff regularly traveled, supervised, tested and negotiated in Hawaii, it also retained counsel in Hawaii and agreed to mediate the dispute in Hawaii."[42]

---

[37] *See Verve, LLC v. Becton Dickson & Co.*, 2002 U.S. Dist. LEXIS 6483, at *4 (E.D. Mich., 2002) (A copy of this opinion is attached to Defendant's Motion to Transfer in Appendix of Unofficially Reported Cases, <u>Exhibit 17</u>).

[38] 2010 U.S. Dist. LEXIS 56694 (N.D. Ohio, 2010) (This opinion is attached to Defendant's Motion to Transfer in Appendix of Unofficially Reported Cases, <u>Exhibit 9</u>).

[39] 2008 U.S. Dist. LEXIS 108000 (N.D. Ohio, 2008) (This opinion is attached to Defendant's Motion to Transfer in Appendix of Unofficially Reported Cases, <u>Exhibit 5</u>).

[40] 2009 U.S. Dist. LEXIS 57792 (N.D. Ohio, 2009) (This opinion is attached to Defendant's Motion to Transfer in Appendix of Unofficially Reported Cases, <u>Exhibit 4</u>).

[41] *Id.*, at *23 (emphasis added).

[42] *Id.*, at *24.

It is obvious why this Court concluded that transferring the cases summarized above to another district would be more convenient for all parties involved.  In contrast, this case will not require the inspection of real property or an accident scene located outside the District, nor will it require examination of evidence which is difficult or costly to transport or exchange. Therefore, this factor also weighs in favor of denying Defendant's Motion.

f.   *Cost of Litigation between New York and Ohio*

If this case were transferred to the N.D.N.Y., Unique would likely need to obtain local counsel in and travel to New York on several occasions, whereas Defendant has already incurred the costs of obtaining local counsel in this District.[43] Moreover, the cost of travel to and lodging in New York is undeniably more expensive than in Ohio. Defendant, a "high volume manufacturer of consumer products" with a nationwide distribution chain, is better suited than Unique, a *qui tam* relator attempting to protect the public against the harms caused by false marking, to bear the costs of defending this cause of action in this District, particularly because it is Defendant's actions which gave rise to this suit.

In conclusion, Defendant's Motion is based solely on one premise – that transferring this case to the N.D.N.Y. would be more convenient for the Defendant. Defendant's failure to show more than a mere shift in conveniences to justify a transfer of venue, and the private interest factors weighing in favor of Unique's choice of venue, support the denial of Defendant's Motion.[44]

2.   <u>Public Interest Factors</u>

The public interest factors to be considered in determining whether to grant a motion to transfer venues under 28 U.S.C. § 1404(a) include (1) the local interest in deciding the

---

[43] Conrad Declaration, at ¶ 8.

[44] *Bacik*, at 1415.

controversy; (2) the burden of jury duty on the community; (3) the court's familiarity with the law to be applied; and (4) docket congestion.[45]

This District certainly has a local interest in protecting consumers and competitors located in the District who have been deceived by the Defendant's false marking violations. Further, the jurors in this case, residents of this District, will be genuinely interested in learning about Defendant's activities and adequately protecting unsuspecting consumers located in the District.

Moreover, docket congestion is given relatively little weight in balancing whether or not to grant a motion to transfer venues under 28 U.S.C. § 1404(a).[46] Nonetheless, Defendant produces caseload statistics for the United States District Courts that are nearly 18 months outdated. Defendant also fails to mention that this District has nearly twice the number of Judges (including District Judges and Senior Judges) as the N.D.N.Y.[47].

Further, as the Court is aware, Unique has filed several other false marking actions in this District alleging violations of Section 292. Accordingly, judicial economy will be best served if this District decided all such actions brought pursuant to Section 292 where, as here, venue is proper in this District.

## IV. CONCLUSION

Defendant has failed to meet its burden of proof that the convenience of the parties and interests of justice weigh <u>strongly</u> in favor of transferring this lawsuit to the N.D.N.Y. Rather, Defendant's Motion establishes nothing other than it would be more convenient for Defendant and its employees if this lawsuit was pursued in the district where its headquarters are located.

---

[45] *Phelp*, at *11.

[46] *See Roop*, at *16.

[47] *See* Declaration of Thomas Hoehner, at <u>Exhibit B</u> (caseload specifics through March 31, 2009).

However, more is required to transfer venues pursuant to 28 U.S.C. § 1404(a) than a mere shifting of inconveniences from Defendant to Unique.

Furthermore, as a self-proclaimed high volume manufacturer of consumer products which are sold nationwide, Defendant should be prepared, and required, to defend actions wherever the sale of its products violates state or federal law. In this case, that place is this District. Therefore, based upon the foregoing, *qui tam* relator, Unique Product Solutions, Limited, respectfully requests that this Court deny Defendant's Motion to Transfer Venue.

Respectfully submitted:

*/s/ David J. Hrina*
Mark J. Skakun, III (No. 0023475)
David J. Hrina (No. 0072260)

BUCKINGHAM, DOOLITTLE &
BURROUGHS, LLP
3800 Embassy Parkway
Suite 300
Akron, OH 44333
Telephone: (330) 376-5300
Facsimile: (330) 258-6559

Counsel for Relator
Unique Product Solutions, Limited

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of September 2010, a copy of RELATOR'S MEMORANDUM IN OPPOSITION TO MOTION TO TRANSFER VENUE was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

Respectfully submitted,

*/s/ David J. Hrina*

«AK3:1041280_v2»

15